UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOSE VILLARREAL SALDIVAR                  §
 and JEANNE SNYDELAAR VILLARREAL          §
                                          §
     Plaintiffs,                          §
                                          §
vs.                                       §          C A  NO. CV-
                                          §
                                          §
SUSAN D. REED, Criminal District Attorney, §
in her individual and official capacity, DAWN §
McGRAW, Assistant Criminal District Attorney §
in her individual and official capacity, Sergeant §
MARCOS MARTINEZ, a peace officer with the §
Office of the Texas Attorney General, in his §
individual and official capacity, DEA Special §
Agent JENNIFER SANCHEZ, in her individual §
and official capacity, and DEA Financial  §
Investigator WALTER J. LINOSKE, in his    §
individual and official capacity.         §
                                          §
     Defendants                           §

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

### I.
### INTRODUCTION

1.      This is an action to enforce Constitutionally protected rights as secured by 42 U.S.C.

§§ 1981 and 1983 and the Fourth and Fourteenth Amendment to the Constitution of the United

States.   Plaintiffs seek damages caused by the actions of the above named defendants and

declaratory and injunctive relief against continued abuse of the official authority of the

Bexar County Criminal District Attorney and the Texas Attorney General on the

grounds that these named defendants have engaged in a joint enterprise and conspired to

deprive the Plaintiffs of their property and security and liberty without any cause much

less probable cause and without due process of law.  The recent actions of the Defendants in seizing the Plaintiffs' property, worth over $4,000,000, without cause and without the opportunity to confront the accusations against them has caused irreparable damage to Plaintiffs' reputation in the community, in the business community and to the Plaintiffs' children in their social and educational environment. The actions of the Defendants unlawfully deny and abridge the Constitutional rights of the Plaintiffs to be free from unreasonable searches and seizures and constitutes an illegal taking and conversion of property and constitutes an abuse of authority.  Moreover, Plaintiffs believe that the actions of the Defendants were motivated on account of the Plaintiffs race, color or ethnicity or nationality. In addition, the challenged actions constitute an impermissible conspiracy to deprive Plaintiffs of their rights and property. Plaintiffs seek a permanent injunction requiring the return of illegally seized property made whole to the value which it had at the time of the illegal seizure or the value it would have attained had the illegal seizure not occurred whichever is larger, as well as punitive damages and seek orders prohibiting the continued harassment of the Plaintiffs and their families.  Plaintiffs further seek costs associated with this cause and attorney's fees.

## II.
## JURISDICTION

2.  Jurisdiction is based upon 28 U.S.C. §1343 a (3) & (4) and upon 28 U.S.C. §1331 for Plaintiffs' causes of action arising from 42 U.S.C. §§ 1981 and 1983 and under the Fourteenth Amendment to the U.S. Constitution. Plaintiffs' claim for declaratory relief is based upon 28 U.S.C. § 2201 and 2202.  Jurisdiction for Plaintiffs' claim for attorneys' fees is based on 42 U.S.C. §§ 1983 and 1988.  Venue is proper in this court under 28 U.S.C. §1391(b).

## III.
## PARTIES

3.  Plaintiff JOSE VILLARREAL SALDIVAR, hereinafter Plaintiff Jose Villarreal, is a Hispanic citizen of the United States and resident of the San Antonio, Texas. Plaintiff VILLARREAL is also a citizen of Mexico.

4.  Plaintiff JEANNE HARDWICKE VILLARREAL, hereinafter Plaintiff Jeanne Villarreal, is a Hispanic permanent legal resident of the United States and a resident of San Antonio, Texas.

5.  Defendant SUSAN REED is criminal district attorney in Bexar County Texas. Defendant Reed is sued in her individual and official capacity.

6.  Defendant DAWN McGRAW is an assistant criminal district attorney in Bexar County, Texas working in the Bexar County District Attorney's Office. Defendant McGraw is sued in her individual and official capacity.

7.  Defendant MARCOS MARTINEZ is a peace officer for the Office of the Texas Attorney General. Defendant Martinez is sued in his individual and official capacity.

8.  Defendant JENNIFER SANCHEZ is an agent with the United States Drug Enforcement Agency. Defendant Sanchez is sued in her individual and official capacity.

9.  Defendant WALTER J. LINOSKI is a financial investigator with the United States Drug Enforcement Agency. Defendant Linoski is sued in his individual and official capacity.

10. At all times relevant to this litigation, all Defendants have acted under the color of the constitution, statutes, ordinances, regulations, customs, and usages of the State of Texas and as to the federal agents, they may have been acting under color of the

constitution, statutes, ordinances, regualtions customs, and usages of the United States, as well.

## FACTUAL BACKGROUND

11.     On or about August 28, 2012 the Drug Enforcement Agency's (DEA) Houston Asset Removal Group, DEA Special Agent Jennifer Sanchez, and DEA Financial Investigator Walter J. Linoski initiated an investigation into the financial activities of Plaintiff Jose Villarreal. ( see paragraph 5 of Attachment A; this document is the Probable Cause Affidavits filed as the basis for the search and seizure; the paragraph numbers have been inserted by counsel so that the references can be easily followed)

12.     Defendants Sanchez and Linoski secured the assistance of Defendant Martinez with their investigation into Plaintiff Jose Villarreal's financial activities.

13.     Although Defendants Sanchez, Linoski and Martinez generally target narcotic traffickers, crimes involving currency manipulation, cash smuggling activities, public corruption activities and other illegal activities, the investigation into Plaintiff Jose Villarreal's financial activities was premised on racial and national origin profiling.  No illegal conduct formed the basis of the investigation.

14.     The Defendants' investigation into Plaintiff's financial activities failed to uncover any illegal activity.

15.     Neither Plaintiff has ever been charged with any crime, much less a crime uncovered by Defendants' investigation.

16.     On or about September 7, 2012 the Defendant Bexar County District Attorney applied for and was granted a "Seizure Warrant".  The Bexar County District

Attorney also asked that the "supporting" affidavits be sealed.  This request was also granted.

17.     The investigation took a total of 10 days, of which there were 3 non-working days. [The investigation was commenced on August 28, 2012 and the seizure affidavits were filed on September 7, 2012.] Thus, it took defendants a total of seven (7) working days to conclude that plaintiffs were conducting illegal activities and seized over $4 million in assets and destroy plaintiffs' reputation.  Based on this "investigation" the Defendants, then with deliberate indifference and reckless disregard for the truth and to the rights of Plaintiffs, swore a so-called probable cause affidavit to support their seizure strategy.

18.     With reckless disregard for the truth, the Defendants, Bexar County District Attorneys represented to the Bexar County District Court that the application for seizure of Plaintiffs' property was premised on affidavits that established probable cause to believe the property to be seized was the product of criminal activity.

19.     Although the application for a seizure warrant did include affidavits, these affidavits failed to establish any link between the property and any crime.  Instead, the affidavits offered conjecture and speculation, but provide no factual allegations of a crime.

20.     Instead the affidavits alleged, with reckless disregard for the truth, that Plaintiffs' own bank checking accounts, investment accounts, safe deposit box, black Cadillac Escalade used to transport funds, and Mercedes Benz S550 allegedly were the product of or purchased with proceeds from criminal activity.

21.     The affidavits do not set out any factual allegations of why the Defendants believed these funds and property were the product of criminal activity; what illegal conduct Plaintiffs had engaged in; or that the source of Plaintiffs' financial resources were from illegal activities.

22.     Instead, the Defendant Bexar County District Attorney has explained to the Bexar County District Court that the only allegations upon which the seizure of Plaintiffs' property is premised is illegal "money service business" and money laundering.

23.     Thus, the Bexar County District Attorney informed the Bexar County District Court that the illegal activity that was being alleged was the money laundering and money services business: "we're not talking about [a] drug transaction, we're talking about money laundering, so the underlying offense is a violation of the Texas Finance Code, Money Services Business. That's all in the affidavit, so you'll be able to see. I didn't want you to think this was a drug transaction. Money Laundering. I just want to clarify that." Motion hearing transcript, p. 36, October 5, 2012

24.     Yet, the Defendants sole basis for alleging that Plaintiffs were engaged in illegal "money service business" is a statement from a Frost Bank employee that Plaintiffs told her that they exchanged pesos for dollars in Mexico.

25.     Yet, Texas law requires that in order to be in the money service business one must be engaged in the following activities: "a person engages in the business of currency exchange if the person exchanges currency and receives compensation or expects to receive compensation, directly or indirectly, for the currency exchange." Section 151.502, Texas Finance Code.

26.     Further, the probable cause affidavit states that the Frost Bank officials also stated on two occasions that the plaintiffs had "propane distribution business". See probable cause aff'd., paragraphs 25 and 41.  Moreover, at paragraph 47 of the attached affidavit, Agent Sanchez states that Plaintiff Jose Villarreal in fact told the federal inspector at the border, when he was declaring the money he was bringing to the United States, that the source of the money was from "an oil company that he worked for in Mexico."

27.     Yet, the Defendants decided to ignore these statements and instead base the whole seizure on one statement made by an unidentified employee at Frost bank that the plaintiffs were "exchanging pesos for dollars." See paragraph 15 of attachment.

28.     The most basic and casual of investigations would have revealed that the Plaintiffs have a number of business interest in Mexico, including a propane distribution company based in the Mexican State of Tamaulipas with over 35 retail gas stations, several distribution centers, a fleet of trucks and over 700 employees; his propane company grosses over $3 million per month and over $45 million per year.

29.     The affidavit is completely void of any allegation, much less a showing of probable cause, that Plaintiffs ever received any compensation in any way for any exchange of currency. In fact no factual allegation is made that Plaintiffs did anything other than request that their own money be converted from pesos to dollars, which was then almost entirely deposited in their own accounts in Texas.

30.     Texas codifies money laundering in Section 34.02 of the Texas Penal Code. It is defines it as an offense when one " (1)  acquires or maintains an interest in, conceals, possesses, transfers, or transports the **proceeds of criminal activity**; (2) conducts,

supervises, or facilitates a transaction involving the **proceeds of criminal activity;** (3) invests, expends, or receives, or offers to invest, expend, or receive, the **proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity;** or (4) finances or invests or intends to finance or invest **funds that the person believes are intended to further the commission of criminal activity.**" (Emphasis added)   In order for any financial transaction to be considered money laundering, the funds involved must be the proceeds of criminal activity, or be believed by the actor to be the proceeds of criminal activity.

31.    Nowhere in the probable cause Affidavit, does the affiant make factual allegations that the funds or property in question are the proceeds of illegal activity Additionally, it is critical to note that nowhere in the Affidavit is there any evidence, nor even allusions to evidence, that a single dollar is the proceeds of criminal activity.[1]

32.    Nevertheless, without probable cause and with deliberate indifference and reckless disregard for the truth and to the rights of Plaintiffs, the Defendants have collectively worked in concert and in a joint enterprise to conspire to and have in fact seized Plaintiffs property, converted such property and have diminished the value of said property in violation of Plaintiffs' rights as protected by the United States Constitution.

## VIOLATIONS

### A. Unreasonable Search and Seizure

33.    Defendants have acted with deliberate indifference and reckless disregard for the truth and to the rights of Plaintiffs and as a result, the Defendants actions as described above violate Plaintiffs' rights to be free from unreasonable search and seizures

---

[1] While the Affidavit does make reference to "commissions" or "fees" that money launderers charge (Affidavit at 6), without the factual basis showing that any money laundering occurred, any allegation that any of the funds in dispute is such a fee is also unsubstantiated.

in violation of Plaintiffs Fourth and Fourteenth Amendment rights as secured by 42 U.S.C. § 1983. As a result of Defendants actions, Plaintiffs have been caused to suffer damages.

## B. Profiling

34.     As a Mexican-American person, Plaintiff Jose Villarreal is a member of a protected class. Defendants purposely targeted Plaintiff because Plaintiff Jose Villarreal is Mexican-American. Defendants' search and seizure of Plaintiff's property had a discriminatory effect on Plaintiff Jose Villarreal. By purposely targeted, searching, and seizing Plaintiff's property without cause because of Villarreal's national origin, Defendants deprived Villarreal of the equal protection of the law within the meaning of the Fouth and Fourteenth Amendment to the United States Constitution as secured by 42 U.S.C. § 1983.

35.     By purposely targeting, searching, and seizing Plaintiff's property because of Villarreal's national origin, Defendants caused Villarreal damages. Defendants acted in reckless disregard of Plaintiff Villarreal's Fourteenth Amendment rights as secured by 42 U.S.C. § 1983.

## C. Profiling (Jeanne Villarreal and Jose Villarreal)

36.     As a Mexican citizens, Plaintiffs Jose and Jeanne Villarreal were purposely targeted by Defendants because Plaintiffs are Mexican citizens. Defendants' search and seizure of Plaintiff's property had a discriminatory effect on Plaintiffs. By purposely targeted, searching, and seizing Plaintiffs' property without cause because of the Villarreals' nationality, Defendants deprived the Villarreals of the equal protection of

the law within the meaning of the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. § 1981.

37.     By purposely targeting Plaintiffs and searching, and seizing Plaintiffs' property because of Plaintiffs nationality, Defendants caused Plaintiffs damages. Defendants acted in reckless disregard of Plaintiffs Fourth Amendment rights as secured by 42 U.S.C. § 1981.

## IMMUNITIES

38.     Qualified and absolute immunity do not protect the Defendants to the degree that Plaintiffs seek injunctive and declaratory relief and attorneys' fees. Furthermore, qualified and absolute immunity do not protect Defendants since all defendant were acting in extra judicial capacity as law enforcement officials and because they acted with careless disregard and deliberate indifference to the rights of Plaintiffs and therefore did not act in any capacity that entitles Defendants to immunity at common law.

## EQUITIES

39.     Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless the Defendants are enjoined from continuing with their illegal fishing expedition and intrusion into Plaintiffs' lives, they will continue to be and will be further irreparably harmed by the continuing violation of their statutory and constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

(a)     That the Court declare the actions of the Defendants individually and collectively illegal in violation of Plaintiffs' rights as secured by the United States Constitution, and 42 U.S.C. §§ 1981 and 1983;

(b)     That the Court grant preliminary and permanent injunctive relief restraining and enjoining the Defendants, their officers, agents, employees, attorneys, and successors in office, and all persons in active concert and participation with them, from engaging in any further illegal seizures of Plaintiffs' property.

(c)     That the Court order the return of all illegally seized property as detailed above and compensate Plaintiffs in an amount that makes them whole;

(d)     That the Court award Plaintiffs damages in the amount of $6,000,000 for loss of reputation and liberty and security caused by these defendants;

(e)     That the Court award Plaintiffs punitive damages in an amount equal to the damages established by the jury in this cause for compensation of losses and damages requested in paragraphs c and d above;

(f)     That the Court grant Plaintiffs their costs, necessary expenses of the litigation, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(g)     That the Court grant Plaintiffs any further relief that may be necessary and proper to ensure racially fair enforcement of the laws of the United States and the State of Texas.

Date: October 24, 2012                              Respectfully Submitted,

ROLANDO L. RIOS
Attorney at Law
Rolando L. Rios & Associates PLLC
Milam Building
115 E. Travis, Suite 1024

San Antonio, Texas 78205
State Bar No. 1693590
(210) 222-2102
(210) 222-2898 fax
rrios@rolandorioslaw.com
(Lead Counsel)


JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
State Bar No. 07731950
210-392-2856
garzpalm@aol.com

Roland J. Garcia,
SBOT: 24057045
Carolyn M. Wentland. P.C.
115 E. Travis St., Suite 724
San Antonio, Texas 78205
Tel: (210) 277-6262
Fax: (210) 277-6206


ATTORNEYS FOR PLAINTIFFS

STATE OF

TEXAS COUNTY

OF BEXAR

REF: Search warrant 2012 W 0402 & 2012 W 0402



## PROBABLE CAUSE
## AFFIDAVIT

1. BEFORE ME, the undersigned authority, personally appeared Sergeant Marcos Martinez, a peace officer for the Office of the Attorney General of Texas who by me being .duly sworn, deposed as follows: My name is Marcos Martinez hereafter named Affiant. I am of sound mind capable of making this affidavit, and personally acquainted with the facts herein stated; and they are true and correct.

2. I, your Affiant has been involved in criminal investigations involving financial crimes, money laundering and white collar crimes. Affia1lt has also been involved in the seizure of assets and asset forfeiture investigations for 17 years. Affiant has conducted and received training in search and seizure affidavits to include asset forfeiture investigations. Affiant is also familiar with the Texas Code of Criminal Procedure, Chapter 59, Forfeiture of Contraband, and Texas Penal Code, Chapter 34, Money Laundering to include Chapter 71 Engaging in Organized Crime. Affiant is also aware of the Texas Finance Code 151 that is regulated by the Texas Department of Banking. Affiant has attended asset forfeiture training conducted by the Federal Law Enforcement Training Center in El Paso, Texas, and the Texas Commission on Law Enforcement Standards and Education in Austin, Texas.

3. Affiant has previously written and executed seizure warrants for contraband as defined under Texas Code of Criminal Procedure, Chapter 59, involving felony offenses. Affiant has testified before grand juries and at trials regarding those seizures and asset forfeiture investigations.

4. Affiant has personally participated in a money laundering investigation into the financial activities of Jose Saldivar Villarreal (DOB: 09/03/1965, TX/DL: 07148317), 12 Arnold Palmer []rive, San Antonio, Texas and his wife Jeanne Snydelaar Hardwicke Villarreal (DOB:07/29/1969, Mexican Passport 04030086932), 12 Arnold Palmer Drive, San Antonio, Texas.

5. The investigation was initiated on or about August 28, 2012 by the DEA Houston Asset Removal Group, DEA Special Agent Jennifer Sanchez and Financial Investigator Walter J. Linoski. Affiant was asked to assist in this investigation as the identified participants reside in San Antonio, Bexar County, Texas. The financial institution involved in the money laundering investigation is located in Bexar County.

## ATTACHMENT A

DocumentT: NOTICE OF SEIZURE AND INTENDED FORFEITURE
                                                                Page 17 of IS

6. Affiant is aware that DEA Agent Jennifer Sanchez and Financial Investigator Walter J. Linoski have been specifically assigned to investigate convoluted financial transactions occurring within the banking system as part of an enforcement program dedicated to the identification, disruption, and dismantling of the financial system and infrastructure used by the criminal organizations to illegally launder currency. This enforcement program targets narcotic traffickers, currency violators, informal funds transfer systems, cash smuggling, public corruption (foreign and domestic), and other illegal activities.

7. During the course of the investigation, Special Agent Sanchez and investigator Linoski identified the first target of this investigation as Jose Saldivar Villarreal and his wife Jeannie Snydelaar Hardwicke Villarreal.

8. The initial money laundering investigation indicates that Jose Saldivar Villarreal is being investigated for being an unlicensed money service which is regulated under Chapter 151, the Texas Finance Code. The proceeds of this criminal activity were then deposited into a bank account at Frost National Bank in a bank account fraudulently obtained by Jose Saldivar Villarreal. Affiant knows that the once proceeds of a criminal activity are identified, and a felony is committed, a person commits the offense of Money Laundering as identified in Chapter 34 of the Texas Penal Code.

9. Affiant knows from previous international money laundering investigations and from discussions with DEA Agent Sanchez and Financial Investigator Walter J. Linoski that on June 15, 2010, the Mexican finance ministry, Secretaria de Hacienda y Credito Publico de Mexico (SHCP), announced new anti-money laundering (AML) regulations that restrict the amounts of physical cash denominated in U.S. dollars (USD) that Mexican banks may receive. These Mexican regulations are intended to mitigate risks of laundering proceeds of crime tied to narcotics trafficking and organized crime. The regulations stated that the restrictions on U.S. currency transactions by banks with individuals went into effect four business days after official publication on June 16, 2010.

10. Because of the Mexican currency laws, the Affiant of the seizure warrant affidavit, DEA Agent Sanchez has observed a dramatic increase in U.S. currency criminal proceeds stockpiled in Mexico that cannot be quickly transferred though traditional methods, such as wire transfers or ACH currency exchanges.

11. Also, the Mexican federal law on the Prevention and Identification of Operations Illicit Proceeds and Terrorism Financing provides a criminal penalty of up to 16 years imprisonment for those who fail to inform the Ministry of Finance of illegal money laundering. The law also provides for a fine of up to 4 million pesos or 100% of the value of the operation, and prohibits cash transactions for the purchase of fixed assets of more than one million pesos.

12. Affiant knows from discussions with DEA Agent Sanchez and from reviewing the seizure warrant affidavit that there were funds located in Frost Bank, signature checking account number 52-3610357; Investment Management Account. F5169800; Safe Deposit Box number 52-2417;and a black Cadillac Escalade EXT, Tampico Mexico license number WH 33 633

located at 12Arnold Palmer, San Antonio, Texas 78257 (used to transport or facilitate the transportation of funds), in the name Jose Saldivar Villarreal and/or Jeanne Snydelaar Hardwicke-Villarreal;

13. And a 2013 Mercedes Benz S550 A 2013 Mercedes Benz, VIN WDDNG7DBODA492458 Registered to Jeanne Villarreal at 12 Arnold Palmer, San Antonio, Texas 78257,

14. purchased with proceeds of criminal activity from Boerne Mercedes via check number 1386 dated July 27, 2012 from account 523610357 in the amount of $113,743.27 that is fungible property acquired or used during violations of the laws of the State of Texas., Finance Code Chapter 151 (Money Service Business), and Chapters 34 (Money Laundering), namely property constituting the proceeds of criminal activity classified as a felony, and this property is contraband as defined by Chapter 59 of the Texas Code of Criminal Procedure.

15. Affiant discussed the money laundering investigation with DEA Agent Sanchez and Financial Investigator Linoski. Affiant knows that the money laundering investigation indicates that Villarreal and his spouse Hardwicke told Frost Bank employees in the past that they are exchanging pesos for dollars in Mexico (in effect, acting as currency brokers).

16. Affiant believes this activity of transporting these dollars across the border into the United States promotes and facilitates the operation of an unlicensed money service business in both Mexico and the United States. Money service businesses in Texas are required to be licensed under Chapter 151 - Texas Finance Code. Operating an unlicensed money transmitting/transfer business is a federal felony violation of 18 U.S.C § 1960.

17. Affiant was told by DEA Agent Sanchez that she believes that Villarreal failed to declare his currency at the point of leaving from Mexico thereby evading the Mexico currency reporting requirements, a felony crime in Mexico.

18. Records show Villarreal and/or his spouse Jeanne Snydelaar Hardwicke - Villarreal have been making large cash deposits into a Frost Bank account (then 81220519) since at least May !999.

19. At some point, Frost bank conducted additional due diligence to determine the source of funds in response to ongoing large cash deposits. Around March 2002, Frost Bank filed six currency transaction reports, (FinCEN form 103) for large cash deposits to the account by Jeanne Villarreal.

20. Two bank employees visited Villarreal at his business in Mexico, and also Hardwicke at their home at 12 Arnold Palmer, San Antonio, TX 78257. The residence is currently assessed at around $636,000 {2012} by the Bexar County CAD.

21. The bank employees observed several *small* cash transactions at the business

location, Calle 12 Chihuahua 723 Fracc San Jose, Cuidad Victoria, Tamaulipas, Mexico. Villarreal told them that this propane business deals mainly in cash, but that he always declares this when he crosses the border to visit his home in San Antonio.

22. Villarreal claimed he always filled out a form for international transportation of currency or monetary instruments [CMIR] FinCEN form 105.

23. On or about April 10, 2003, Jose Saldivar Villarreal opened an investment management account number F5169800 at Frost.   Villarreal initiated an internal transfer from checking account 081220519 in the amount of $2,330,000.00 to initially fund this account.

24. Villarreal attested that he was a nonresident and provided an address in Victoria, Tamaulipas, Mexico. Villarreal also signed IRS form W-8BEN certifying that he, the beneficial owner, is a resident of Mexico within the meaning of the income tax treaty between the United States and that country, even though at the top of this form it states, 'do not use this form for a US citizen or other US person including a resident alien individual'. Under part IV - Certification, Jose Villarreal signed that the statements he made in this form were true and correct to the best of his knowledge under penalties of perjury.

25. On November 3, 2006, Villarreal and his spouse opened account 523610357 at Frost.   The signature cards listed both the Mexico and the San Antonio addresses. Villarreal listed his employment as Comvisca SA De CV, while his wife stated she was a housewife.  2006 information states the husband and wife stated when they opened account number 523610357 that the source of their funds would be their propane distribution business in Mexico. The name of this propane business is Combustibles De Victoria SA De CV in Cuidad Victoria, Mexico, also doing business as Comvisca.

26. On November 18, 2010, Jose Villarreal and his spouse Jeannie Snydelaar Hardwicke signed a safe deposit box signature card for box 2417 at Frost Bank branch 52. The box size was noted as 3X5.

27. A debit ticket indicates that on November 16, 2006, Jose Saldivar Villarreal initiated an internal transfer to trust account f 51069800 in the amount of $200,000.

28. A cash deposit ticket shows that on April2, 2007, Jose Saldivar Villarreal initiated a cash deposit in the amount of $180,000 into account 523610357.

29. A cash deposit ticket shows that on November 13, 2007, Jose.Saldivar Villarreal initiated a cash deposit in the amount of $128,000 to account 523610357.

30. A cash deposit ticket shows that on March 24, 2008, Jose Villarreal initiated a cash deposit in the amount of $210,000 to account 523610357.

31. A wire transfer record indicates that on April 17, 2008, Jose Villarreal initiated a wire

transfer in the amount of $3 million from account 523610357 payable to Bank of Bermuda LTD for the purchase of an Old Mutual Bermuda Trust and Sub Trust annuity in his name, contract number UE3008388.

32. On June 28, 2008, Jose Villarreal arrived at the Los Indios port of entry from Victoria, Mexico at approximately 11:06 AM in a personally owned vehicle with Mexican license plate WE73443. Vlllarreal declared $141,836.39 in US currency, and a $1500 bearer instrument. Customs inspectors verified this amount.

33. A cash in ticket shows that on July 2, 2008, Jeanne Hardwicke and Jose Villarreal conducted a cash deposit of $120,000 into account 523610357. The identification document on file at Frost Bank for Hardwicke is Mexico passport number 04030086932. The identification document on file at Frost for Villarreal is Mexico passport number 03030049254. Frost Bank filed the (CTR) with this identification information.

34. Affiant knows from a review of the seizure affidavit that it noted the difference between the amount declared at the border on June 28 and the money deposited on July 2. The Affiant, Agent Sanchez believes that this difference equates to a "fee" for transporting thi.s money from Mexico.

35. A cash in ticket shows that on November 7, 2008, Jose Villarreal conducted a cash deposit of $170,000 into account 523610357.

36. On November 12, 2008 Jose Villa.rreal wrote check number 159 in the amount of $402,694 payable to the Bjorn's audio video. A notation on the check states "Bjorn's Audio Video Home Theater".

37. On December 2, 2008, Villarreal initiated debit from account 523610357 in the amount of $200,000 as a transfer of assets to brokerage account F5169800.

38. The Affiant, Agent Sanchez points out the difference between the amounts declared at the border in the amount actually deposited into the bank account, approximately $21,000. The Affiant, Agent Sanchez believes, based on experience in similar cases, that this difference is the "fee" or commission for transporting currency across the border.

39. On November 2, 2010, at approximately 10:11 AM, Villarreal arrived at the Los Indios, Texas port of entry from Victoria in a privately owned black Cadillac Escalade EXT with Tampico Mexico license WH33633. Villarreal filed a CMIR declaring he was importing $864049 in *Euros* into the United States. Villarreal claimed US Citizenship and provided US passport 434757158. The CMIR indicates Villarreal declared $864,049 in Euros on behalf of Combustibles Victoria. This declaration amount and currency type was verified by US Customs inspectors.

40. The Affiant, Agent Sanchez, reviewed historical data for the exchange rate between

Euros and US dollars around November 10, 2010. One Euro was valued at $1.355. Therefore, €864,049 is worth approximately $1,170,786 in November 2010.

41. A Frost cash in ticket shows that on November 18, 2010, Jose S. Villarreal conducted a cash deposit for $820,000 into account 523610357 at the Park North Financial Center branch of Frost Bank branch 52. The deposit consisted of $100 and $50 bills. At that time, Villarreal told bank employees that the cash was his personal earnings from his propane gas sales company. A (CTR) was filed by Frost.

42. The Affiant, Agent Sanchez noted that the Euros imported on November 2, 2010 somehow became US dollars on November 18, 2010. The Affiant, Agent Sanchez believes it is simply not credible or believable that a propane distributor in the interior of Mexico could legitimately acquire hundreds of thousands of Euros in the course of his propane business.

43. The Affiant, Agent Sanchez also points out the difference between the amount declared at the border on November 2 as opposed to the amount of cash deposited at Frost on November 18. The difference is approximately $350,786.

44. The Affiant, Agent Sanchez noted a safe deposit box access form for box number 2417 at branch 52 was dated November 18, 2010 at 9:48 AM, the same day as the $820,000 cash deposit at the same branch. Therefore your affiant believed that the excess cash of approximately $350,000 from the euro exchange was placed into the safe deposit box at this time by Jose Villarreal based on the simultaneous cash deposit transaction.

45. On March 22, .2011, Jose Villarreal .initiated an internal transfer from account 523610357 as a transfer of assets to brokerage account F51698.00 in the amount of $800,000.

46. On July 20, 2012, (a Friday) at approximately I 0:07 AM Villarreal arrived at the port of entry and filed a CMIR for $1.9 million. Villarreal arrived at the port of entry in the Black Escalade EXT personal vehicle with Mexico license WH33633. The currency was verified by two US Customs inspectors.

47. The inspector noted that the subject Villarreal claimed he was visiting an oil company that he worked for in Mexico and was bringing in large amount of money back because he was hoping that he would never have to return to Mexico because of the violence.

48. The Affiant, Agent Sanchez notes the information provided to the customs inspectors is substantially different than the story told the bank employees on July 24 when he deposited the cash.

49. A Frost Bank deposit slip and cash in ticket shows that on July 24, 2012, Jose Saldivar Villarreal conducted a cash deposit for $1,897,34!.36 into account 523610357, plus

approximately 492,000 MXN pesos exchanged for $33,342.3.6 cash out at Park North Financial Center in San Antonio. The deposit consisted of $100 and $50 bills. The customer stated that the cash represented three years of savings from his companies' earnings. A (CTR) was filed.

50. On July 27, 2012, Jose Villarreal wrote check number 1386 in the amount of $113,743.27 payable to Mercedes-Benz of Boerne, apparently for the purchase of a vehicle. A notation in the comment section is printed "wife present".

51. On August 2. 2012, Jeanne Villarreal wrote check number 1389 in the amount of $387,704.81 payable to Texas Investors Title.

52. The Affiant of the seizure affidavit, DEA Agent .Sanchez conducted a review of reports required to be filed under the Bank Secrecy Act in order to establish some historical perspective for the international movement currency and subsequently large cash deposits at Frost Bank for the following identification numbers: DEA Agent Sanchez discussed the findings with Affiant and Affiant reviewed the information from the seizure affidavit.

53. Account number 523610357 (current Frost Bank account used by the Villarreal's).

54. Between November 10; 2006 and July 24, 2012, Frost Bank filed 19 CTRs totaling $4,065,025 for cash deposits to account 523610357. Except for two occasions, both Villarreal and Hardwicke are listed on the (CTR).

55. US Passport 4347571858: (currently utilized by Jose Villarreal)

56. Between June 28, 2008 and November 2, 2010, five CMIRs were filed under US passport number 43475718 totaling $1,220,974.  Villarreal obtained this passport in 2007.

57. Mexico passport 0330049254: (currently utilized by Jose Villarreal).

58. Mexico passport 04030086932: (utilized by Hardwicke).

59. Between July 19, 2005 and July 24, 2012, 23 CTRs were filed by Frost Bank passport number 04030086932 for cash deposits totaling $4,151,025. This passport number belongs to Hardwicke.

60. Social Security number 454-910-0514: (utilized by Jose Villarreal)

61. Between October l,1999 and April 25, 2006, 15 CTRs were filed by .Frost Bank under Social Security number 454940051 totaling $980,885.

62. Between September 14, 1999 and February 23, 2006, seven CMIRs for currency importations were filed under Social Security number 454910051 totaling $774,274.

63. US passport number 132327653: (owned by Villarreal until 2007)

64. Between July 22, 2000 and July 3, 2007, 18 CMIRs were filed under passport number 132327653 totaling $2,375,049. This is Jose Villarreal's US passport until 2007.

65. Frost Bank account number 81220519: (the original account owned by the Villarreal's)

66. Between May 19, 1999 and November 2, 2006, 34 CTRs were filed in Frost Bank account 81220519 for cash deposits totaling $2,438,885.

67. Affiant read and discussed the probable cause seizure affidavit with DEA Agent Sanchez and knows that Villarreal is also actively participating in an ongoing dual passport / identity scheme utilizing passports from both Mexico and United States Dual identities allow Villarreal to make false and misleading statements to law enforcement and governmental agencies, and evade       reporting requirements on both sides of the border. Claiming to be a Mexican enabled Villarreal to make false and misleading statements to Frost Bank concerning his legal and tax status.

68. Affiant believes that Villarreal has committed fraud against Frost Bank by and through his statements on various account forms and supporting documents.

69. Affiant knows from reading the search warrant affidavit that Villarreal attested that he was a nonresident and provided an address in Victoria, Tamaulipas Mexico. He also signed IRS form W-8BEN certifying that he, the beneficial owner, is a resident of Mexico within the meaning of the income tax treaty between the United States and that country, even though at the top of this form it states, "do not use this form for a US citizen or other US person including a resident alien individual". Under part IV -- certification, Jose Villarreal signed that the statements he made in this from were true and correct to the best of his knowledge under penalties of perjury.

70. Affiant read and discussed the probable cause seizure affidavit with DEA Agent Sanchez and uncovered that Villarreal claims to be a born in Reynosa, Mexico and San Antonio, Texas. Information from US sources in Mexico indicates that Jose Saldivar Villarreal was born in Texas and that six weeks elapsed from his stated date of birth to the birth date registry in Mexico. This registry information delay typically occurs when a Mexican national gives birth to a child in the United States and subsequently travels back to Mexico with the child.

71. Villarreal has provided Social Security Number 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 to customs inspectors in the past. This Social Security number is believed to be registered to Jose S. Villarreal born in 1983, residing at the same address as the elder Villarreal.

72. Bank records clearly show he presents himself (under penalty of perjury) as a Mexican national to Frost Bank utilizing a Mexican passport, currently number 03030049254. Fraud and

false statements regarding bank entries, reports and transactions is a federal felony and a specified unlawful activity under 18 U.S.C 1956 (c) (7) (D). See 18 U.S.C § 1006.

73. Affiant is aware from DEA Agent Sanchez, Financial Investigator Walter J. Linoski and from a previous money laundering investigation that people engaging in illegal criminal activities like drug distribution do not want law enforcement to scrutinize their financial activity. The Affiant, DEA Agent Sanchez also knows from previous experience that these individuals will often concoct a scheme to appoint someone else to transport and deposit their cash in order to conceal the true ownership of this money. The Affiant, DEA Agent Sanchez believes in this particular case, the perpetrators filed the US currency reporting forms in order to appear legitimate, while failing to file any forms in Mexico.

74. With all the checkpoints and roadblocks in Mexico, your affiant believes it is not reasonable or rational to believe that the Villarreal's, or any person, could drive around in an expensive Escalade with almost $2 million in cash without being stopped and searched. The affiant, DEA Agent Sanchez further believes that Villarreal could not transport large amounts of cash to and across the border unless he was under the protection of a major criminal organization.

75. If you trade pesos for dollars in Mexico, you are a black market peso operator and you are extracting a substantial fee for transporting money for someone else. DEA Agent Sanchez knows from experience in numerous similar money laundering investigations, that Mexican Narco traffickers, and corrupt government officials routinely employ this money laundering scheme to transport their ill-gotten gains back to the United States to acquire assets.

76. Based on the foregoing facts, The Affiant, of the seizure affidavit, DEA Agent Sanchez believed that Jose Saldivar Villarreal and his spouse intended to transport and conduct financial transactions with the proceeds generated from an illegal money service business and planned events as an integral part of a illegal scheme, and are funds that constitute fungible property involved in money laundering transaction under Chapters 34 and 37 of the Texas Penal Code and Chapter 151 of the Finance Code. Moreover, these funds are subject to seizure and forfeiture by the State of Texas under Chapter 59 of the Texas Code of Criminal Procedure

77. On September 7, 2012 Affiant was present when the Affiant of the seizure affidavit, DEA Agent Sanchez presented the search warrant affidavit and search warrant to District Philip A. Kazen Jr, in District Court 227th. On this same date, the search and seizure warrant was at Frost National Bank, in San Antonio, Texas. The search and seizure was for the identified bank accounts.

78. On this same date, Sgt. Martinez received the following assets related to the search and seizure of the bank account, investment management Account, safety deposit boll. These assets were seized by search and seizure warrant 2012 W 0401.

*Check 001067932   From Fi-ost National Bank payable to Susan Reed, Bexar Coun.ty District Attorney Office, dollar amount $1,619,169.52.*

*Check 052021811   From Frost National Bank payable to Susan Reed, Bexar County District Attorney Office, dollar amount $14,592.35. This is the amo!!nt of funds seized from the safety deposit box which was in Euros and Pesos.*

*Also seized from the safety deposit box was (6) Gold Coins that were taken as evidence and logged into the San Antonio Police Department evidence room. The SAPD case number is 12202895-1, the inventory number is (990000857207).*

*Also seized was- an Investment Management Account from Frost National Bank: This dollar. amount will be paid out in 7 to 10 business days according to Frost National Bank. Once this amount is paid out, a supplement Return and Inventory will be submitted.*

79. On this same date, under search and sei.zure warrant (2012 W 0404), the following assets were seized.

*( 1) 2013 Mercedes-Benz S550, VIN WDDf)NG7f)B0DA492458, TXILP BBW-6343*

*(1} 2008 Cadillac Escalade, VIN 3GYFK62878GJ67290, Mexico Plates WH-33-633.*

80. The property seized was transferred to the San Antonio Police Department Storage Lot by City contract wrecker service.  The Storage Lot is located at 3625 Growdon Road, San Antonio, Texas. On September 7, 2012, both vehicles were secured at the identified location.

81. On September 10, 2012, Affiant returned the search and seizure warrants to the District Court Clerk of Bexar County.

82. On September 11, 2012, Affiant filed a return and inventory with the District Clerk Office of Bexar County. Affiant knows that a supplement return will have to be filed once the funds from the Investment management Account are received.

83. On September 18, 2012, Affiant was contacted by Frost National Bank and a cashiers check in the amount of $2,592,273.70. The cashier check number is 926020 and is pay to the order of Susan Reed, Bexar County District Attorney Office.

84. On September 19, 2012, Affiant filed a return and inventory with the District Court Clerk Office of Bexar County for the funds seized in the dollar amount of $2,592,273.70.

85. Affiant knows that under Chapter 151 (Money Service Business) of the Texas Finance Code, it is a state felony to conduct oneself as a money service business without a money service business license

86. Affiant is aware and familiar with the Texas Penal Code Section 34.02 Money Laundering. A person commits an offense if the person knowingly: (1) acquires or maintains an interest in,

conceals, possesses, transfers or transports the proceeds of criminal activity; (2} conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity; (3) invest, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or (4) finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity.

87. Affiant is aware that in the same Section 34.02 Money Laundering; Criminal Activity is any offense, including any preparatory offense that is: (A) classified as a felony unde( the laws of this state or the United States or (B) punishable by confinement for more than one year under the laws of another state.

88. Texas Penal Code, Section 34.02 Money Laundering provides that the use of proceeds of criminal activity is a violation of Texas law in particular Texas Penal Code, Section 34.02 Money Laundering. The criminal act of money laundering through the use of proceeds of criminal activity is a predicate offense under Texas Code of Criminal Procedure, Chapter 59, Article 59.01 (2) (B) (iv). Under the Texas Penal Code, Sect.ion 34.01 (I) Criminal Activity means any offense, including any preparatory offense that is: (A) classified as a felony under the laws of this state or the United States.

89. Affiant has probable cause to believe the said suspected United States currency in the identified bank accounts is contraband under Texas Code of Criminal Procedure, Article 59.01(2). The Texas Code of Criminal Procedure defines contraband as property of any nature, including real, personal, tangible, or intangible that is (A) used in the commission of: (!) any first or second degree, felony under the Texas Penal Code; (B) used or intended to be used in the commission of: (iii) any felony under Chapter 153, Finance Code; (iv) any felony under Chapter 34, Penal Code; and (xii) any offense under Chapter 71, Penal Code; and (D) acquired with proceeds gained from the commission of a first or second degree felony under the Texas Penal Code, a felony under Chapter 153, Finance Code, a felony under Chapter 34, Penal Code, or any offense under Chapter 71, Penal Code

90. Chapter 59.02 of the Texas Code of Criminal Procedure provides that contra seizure and forfeiture under this same chapter. Affiant is aware that Texas Procedure, Article 59.03, provides for the seizure of contraband by any peace authority of a search warrant.

91. The Texas Code of Criminal Procedure, Article 18.02(12), provides that a search warrant may be issued to search for and seize contraband subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

_Sgt. m. mmm l_        _10-3-2012_

Affiant                        Date

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS THE 3 oF Oct 2012

_Angela Trevino_

Notary Public

My commission expires: 1-15-15



ANGELA TREVINO
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-15-2015



CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY M'I<INNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*October 04, 2012*

**DONNA KAY MℓKINNEY**
**BEXAR COUNTY, TEXAS**

**By:**   MARC GARCIA, Deputy District Clerk

*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

PRIVATE PROCESS

"The State of Texas"          NO.   2012-CI-16318

‖‖‖‖ ‖‖‖‖‖‖‖‖‖
2012CI16318 -800001

THE STATE OF TEXAS
Plaintiff
vs.

$4 226 035.57 ET AL
Defendant
( Note: Attached Document May Contain Additional Litigants. )

**NOTICE**

**Citation** Directed to: JOSE SALDIVAL VILLARREAL

IN THE DISTRICT COURT

73rd JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the   4th   day of October       , 2012  .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON **THIS** DAY OF  October A.D., 2012.

NOTICE OF SEIZURE & INTENDED FORFEITURE

TROY LONNIE MEINKE
Attorney/PLAINTIFF
address   300 DOLOROSA 5030
          SAN ANTONIO, TX 78205-3039

DONNA KAY MCKINNEY
District Clerk of Bexar County, Texas

**By:/ &**   Deputy
MARC GARCIA

---

OFFICER'S RETURN

Cametohand   *1? dayof(}C...Tv/!e-h, A.D.;?4!2...,at*   *'f 3d*   o'clock   *tf*   .M. and<e ecuteiL{not executed) the ___ day of *Bc.-Tir:S£&* , A.D. *2 tJ (J....*, in  f£/....J., *A/* at /0:-;n--o'clock  *.k* .M.bydeliveringto<t-?..i£ *L!t-L-DtvA-L  Vi  Lt.-':lt!U.P/1-L* in person a true copy of this citation together with the accompanying copy of plaintiff's petition.  Served at  *1 O{}  j).JI/A6 J A-*
Cause of failure to execute this citation
I traveled         miles in the execution-o f""th i-s-c it""""at""io_n -=F e-e-s:-------;S"e""rv""i=-ng,..,c""ita""t""io:-:n:---
$ _____Mileage        Total $ _____
         Badge/PPS # _____

By *Jimmy W Jytt*                  *#1 ;VI*   County, Texas
*\BEXAR*                           *Bc.-P/i..*

N  -PEA  E OFFIC  VERIFICATION

The State of Texas

VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____day **of** — — — — — — —  _____

NOTARY PUBLIC, STATE OF TEXAS

ORIGINAL