UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE VILLARREAL SALDIVAR and JEANNE SNYDELAAR VILLARREAL<br><br>Plaintiffs,<br><br>vs.<br><br>SUSAN D. REED, Criminal District Attorney, in her individual and official capacity, DAWN McGRAW, Assistant Criminal District Attorney in her individual and official capacity, Sergeant MARCOS MARTINEZ, a peace officer with the Office of the Texas Attorney General, in his individual and official capacity, DEA Special Agent JENNIFER SANCHEZ, in her individual and official capacity, and DEA Financial Investigator WALTER J. LINOSKI, in his individual and official capacity.<br><br>Defendants | § § § § § § § § § § § § § § § § § § § § § | C A 5:12-cv-01018 FB |

## PLAINTIFFS' ADVISORY TO THE COURT

In their responses to this litigation, the Defendants to varying degrees assert their outrage at the suggestion that their actions are based on existing bias against Hispanics. For example, Defendant Martinez asserts outrage that:

> "his conduct was based on race or national original because Plaintiffs are Mexican Hispanics are frivolous, absurd, bizarre, offensive and demonstrate Plaintiffs' reckless disregard for truth, which has apparently been willingly sacrificed on Mammon's altar." See Martinez Answer paragraph 10.

The bias and racial profiling mentality is alive and well within the US Attorneys' office; in particular, in an unrelated case involving the San Antonio US Attorneys office, two Supreme Court Justices, Justice Sotomayor and Justice Breyer filed a Statement criticizing the actions of the San Antonio US Attorneys office as having:

"tapped a deep and sorry vein of racial prejudice that has run through the history of criminal justice in our nation."

It also appears that this bias is so engrained in the culture of law enforcement that even when it is so obviously biased and even after two justices of the Supreme Court show their displeasure, the Department of Justice and the offending AUSA simply don't appreciate the serious nature of the bias, and thus continue to defend the stereotype as simply context for the question. See newspaper article attached to this Advisory.

The Statement filed by Justices Sotomayor and Breyer along with the related newspaper article is attached to this filing.

Date: March 11, 2013

Respectfully Submitted,

_____
ROLANDO L. RIOS
Attorney at Law
Rolando L. Rios & Associates PLLC
Milam Building
115 E. Travis, Suite 1024
San Antonio, Texas 78205
State Bar No. 1693590
(210) 222-2102
(210) 222-2898 fax
rrios@rolandorioslaw.com
(Lead Counsel)

JOSE GARZA
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
State Bar No. 07731950
210-392-2856
garzpalm@aol.com

Roland J. Garcia,
SBOT: 24057045
Carolyn M. Wentland. P.C.
115 E. Travis St., Suite 724

San Antonio, Texas 78205
Tel: (210) 277-6262
Fax: (210) 277-6206

ATTORNEYS FOR PLAINTIFFS

### NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I, ROLANDO L. RIOS, Attorney for the Plaintiffs, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Plaintiffs' Court Advisory** in accordance with the Electronic Case Files System of the Western District of Texas and that they were served trough the electronic system on this the 11th day of March, 2013.

ROLANDO L. RIOS





Traffic  Weather  Subscriber Services  e-edition    Register  Sign In
Tuesday, March 05, 2013
60 °F  San Antonio, TX
Scattered Clouds

Search  ● mySA  ○ Web Search by YAHOO!  ○ Businesses

Home  News  Opinion  Sports  Spurs  Business  Life  Food  A&E  Obituaries  Shopping  Jobs  Autos  Homes  Classifieds  Index ▼

Local  Education  Environment  Energy  Mexico  Military  Politics  Religion  Columnists  Communities  Data Central  Cityscape  Traffic  Weather

## 2 justices rip S.A. assistant federal attorney

Comment called racially charged.

Guillermo Contreras, Staff Writer

Updated 11:57 pm, Monday, February 25, 2013

VIEW: Larger | Hide                    1 of 2    ◄ PREV  NEXT ►



Sotomayor

 



Texas Department of Insurance
Help Reduce Insurance Rates
1-800-252-3439
CLICK HERE



Latest News Slideshows
Displaying 1-3 of 10

Texans in 'Idol' 20 | Wind, fire warnings issued for S.A. | Beverly House for rent

### From Around the Web

The Golden State's "self-inflicted crisis" (ExxonMobil's Perspectives Blog)

9-year-old Girl Gives Birth to a Baby Boy (itsybitsysteps)

Ohio Bartender Fired After Alerting Police About Drunk Patron (ABC)

Teen Sentenced to Prison for Texting-While-Driving Death (Web2Carz)

[?]

8  17  0  3
Tweet  Like    Share
Comments (56)  Email This
Larger | Smaller  Font
Printable Version

**More Information**
▸ Read the justices' statement

**Recent Headlines**
St. Louis company wins suit over bowl-shaped chip
Tranquilizers used on roaming deer at Texas school
Prison sentence in scam against NY oil heir
Mark Cuban loses bid to dump insider trading case

In a rare move, two U.S. Supreme Court justices Monday called out a federal prosecutor in San Antonio for what they called a racially charged comment he made while cross-examining a black defendant in a drug trial in 2011.

Justices Sonia Sotomayor and Stephen Breyer released the statement as part of the court's decision not to hear the defendant's appeal, making clear that despite the ruling, they didn't tolerate the remark.

The prosecutor, Assistant U.S. Attorney Sam Ponder, told the San Antonio Express-News that the question came as part of establishing the totality of the scenario surrounding a drug deal and wasn't meant to be construed as racially charged or reflective of who he is as a person.

Most Read | Most Commented

Ponder was questioning defendant Bongani Charles Calhoun about his claim that he did not realize a friend was engaging in a drug deal when they were arrested in 2008.

Calhoun has maintained his innocence, and he argued that he thought he was simply on a road trip when federal agents caught his friend trying to buy cocaine at a San Antonio hotel room.

"You've got African Americans, you've got Hispanics, you've got a bag full of money. Does that tell you — a light bulb doesn't go off in your head and say, 'This is a drug deal?'" Ponder asked.

Calhoun's trial lawyer "inexplicably" never objected, the justices wrote.

Sotomayor, joined by Breyer, wrote that Ponder "tapped a deep and sorry vein of racial prejudice that has run through the history of criminal justice in our nation."

They referenced past court cases in which prosecutors have insinuated that the race of defendants alone proved their guilt.

Calhoun appealed his guilty verdict up to the Supreme Court, arguing that Ponder's question violated his constitutional rights.

The two justices agreed with the majority of the court in declining to hear Calhoun's appeal on procedural grounds but released a separate statement critical of Ponder.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

## BONGANI CHARLES CALHOUN v. UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 12–6142. Decided February 25, 2013

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, respecting the denial of the petition for writ of certiorari.

I write to dispel any doubt whether the Court's denial of certiorari should be understood to signal our tolerance of a federal prosecutor's racially charged remark. It should not.

Petitioner Bongani Charles Calhoun stood trial in a federal court in Texas for participating in a drug conspiracy. The primary issue was whether Calhoun knew that the friend he had accompanied on a road trip, along with the friend's associates, were about to engage in a drug transaction, or whether instead Calhoun was merely present during the group's drive home, when the others attempted to purchase cocaine from undercover Drug Enforcement Agency (DEA) agents. Two alleged co-conspirators who had pleaded guilty testified to Calhoun's knowledge. Law enforcement officers also testified that they discussed the drugs with Calhoun immediately before they broke cover to arrest the group, and that Calhoun had a gun when he was arrested. In his defense, Calhoun testified that he was not part of and had no knowledge of his friend's plan to purchase drugs, that he did not understand the DEA agents when they spoke to him in Spanish only, and that he always carried a concealed firearm, as he

was licensed to do. It was up to the jurors to decide whom they believed.

The issue of Calhoun's intent came to a head when the prosecutor cross-examined him. Calhoun related that the night before the arrest, he had detached himself from the group when his friend arrived at their hotel room with a bag of money. He stated that he "didn't know" what was happening, and that it "made me think ... [t]hat I didn't want to be there." Tr. 125–126 (Mar. 8, 2011). (Calhoun had previously testified that he rejoined the group the next morning because he thought they were finally returning home. *Id.*, at 109.) The prosecutor pressed Calhoun repeatedly to explain why he did not want to be in the hotel room. Eventually, the District Judge told the prosecutor to move on. That is when the prosecutor asked, "You've got African-Americans, you've got Hispanics, you've got a bag full of money. Does that tell you—a light bulb doesn't go off in your head and say, This is a drug deal?" *Id.*, at 127.

Calhoun, who is African-American, claims that the prosecutor's racially charged question violated his constitutional rights. Inexplicably, however, Calhoun's counsel did not object to the question at trial. So Calhoun's challenge comes to us on plain-error review, under which he would ordinarily have to "demonstrate that [the error] 'affected the outcome of the district court proceedings.'" *Puckett v. United States,* 556 U. S. 129, 135 (2009) (quoting *United States v. Olano,* 507 U. S. 725, 734 (1993)). Yet in his petition for writ of certiorari, Calhoun does not attempt to make that showing. Instead, Calhoun contends that the comment should lead to automatic reversal because it constitutes either structural error or plain error regardless of whether it prejudiced the outcome. Those arguments, however, were forfeited when Calhoun failed to press them on appeal to the Fifth Circuit. Given this posture, and the unusual way in which this case has been

litigated, I do not disagree with the Court's decision to deny the petition.*

There is no doubt, however, that the prosecutor's question never should have been posed. "The Constitution prohibits racially biased prosecutorial arguments." *McCleskey* v. *Kemp,* 481 U. S. 279, 309, n. 30 (1987). Such argumentation is an affront to the Constitution's guarantee of equal protection of the laws. And by threatening to cultivate bias in the jury, it equally offends the defendant's right to an impartial jury. Judge Frank put the point well: "If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice." *United States* v. *Antonelli Fireworks Co.,* 155 F. 2d 631, 659 (CA2 1946) (dissenting opinion) (footnote omitted). Thus it is a settled professional standard that a "prosecutor should not make arguments calculated to appeal to the prejudices of the jury." ABA Standards for Criminal Justice, Prosecution Function and Defense Function, Standard 3–5.8(c), p. 106 (3d ed. 1993).

By suggesting that race should play a role in establishing a defendant's criminal intent, the prosecutor here

———————

*The prosecutor's comment was not an isolated one, but Calhoun similarly failed to challenge the reprise. During defense counsel's closing argument, counsel belatedly criticized the prosecutor's question. On rebuttal, the prosecutor responded: "I got accused by [defense counsel] of, I guess, racially, ethnically profiling people when I asked the question of Mr. Calhoun, Okay, you got African-American[s] and Hispanics, do you think it's a drug deal? But there's one element that's missing. The money. So what are they doing in this room with a bag full of money? What does your common sense tell you that these people are doing in a hotel room with a bag full of money, cash? None of these people are Bill Gates or computer [magnates]? None of them are real estate investors." Tr. 167–168 (Mar. 8, 2011).

tapped a deep and sorry vein of racial prejudice that has run through the history of criminal justice in our Nation. There was a time when appeals to race were not uncommon, when a prosecutor might direct a jury to "'consider the fact that Mary Sue Rowe is a young white woman and that this defendant is a black man for the purpose of determining his intent at the time he entered Mrs. Rowe's home,'" *Holland* v. *State,* 247 Ala. 53, 22 So. 2d 519, 520 (1945), or assure a jury that "'I am well enough acquainted with this class of niggers to know that they have got it in for the [white] race in their heart,'" *Taylor* v. *State,* 50 Tex. Crim. 560, 561, 100 S. W. 393 (1907). The prosecutor's comment here was surely less extreme. But it too was pernicious in its attempt to substitute racial stereotype for evidence, and racial prejudice for reason.

It is deeply disappointing to see a representative of the United States resort to this base tactic more than a decade into the 21st century. Such conduct diminishes the dignity of our criminal justice system and undermines respect for the rule of law. We expect the Government to seek justice, not to fan the flames of fear and prejudice. In discharging the duties of his office in this case, the Assistant United States Attorney for the Western District of Texas missed the mark.

Also troubling are the Government's actions on appeal. Before the Fifth Circuit, the Government failed to recognize the wrongfulness of the prosecutor's question, instead calling it only "impolitic" and arguing that "even assuming the question crossed the line," it did not prejudice the outcome. Brief for United States in No. 11–50605, pp. 19, 20. This prompted Judge Haynes to "clear up any confusion—the question crossed the line." 478 Fed. Appx. 193, 196 (CA5 2012) (concurring opinion). In this Court, the Solicitor General has more appropriately conceded that the "prosecutor's racial remark was unquestionably improper." Brief in Opposition 7–8. Yet this belated ac-

knowledgment came only after the Solicitor General waived the Government's response to the petition at first, leaving the Court to direct a response.

I hope never to see a case like this again.